1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STEVEN ALVAREZ, | ) Case No. EDCV 13-2038-JPR |
| | ) |
| Plaintiff, | ) |
| | ) **MEMORANDUM OPINION AND ORDER** |
| vs. | ) **REVERSING COMMISSIONER** |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social | ) |
| Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**I.   PROCEEDINGS**

Plaintiff seeks review of the Commissioner's final decision denying his application for supplemental security income ("SSI"). The parties consented to the jurisdiction of the undersigned U.S. Magistrate Judge under 28 U.S.C. § 636(c).  This matter is before the Court on the parties' Joint Stipulation, filed July 15, 2014, which the Court has taken under submission without oral argument. For the reasons stated below, the Commissioner's decision is reversed and this action is remanded for further proceedings.

1

**II.   BACKGROUND**

Plaintiff was born on March 12, 1987.  (Administrative Record ("AR") 150.)  He completed the 12th grade and previously worked as a parking valet, courier, and construction laborer. (AR 177.)

On November 12, 2010, Plaintiff filed an application for SSI.  (AR 61-62, 150-58.)  Plaintiff alleged that he had been unable to work since August 10, 2009 (AR 150), and listed his medical conditions as "not coherent," "racing thoughts," "depressed," "anxious," "OCD," "blank look," "emotional d/o," "bi-polar," "schizophrenia," "schizoaffective," "phychosis [sic]," and "obsessive eating" (AR 176).  After Plaintiff's application was denied, he requested a hearing before an Administrative Law Judge.  (AR 88-90.)  A hearing was held on June 11, 2012, at which Plaintiff, who was represented by counsel, testified, as did his mother and a vocational expert. (AR 26-60.)  In a written decision issued June 21, 2012, the ALJ determined that Plaintiff was not disabled.  (AR 11-22.)  On September 9, 2013, the Appeals Council denied Plaintiff's request for review.  (AR 1-3.)  This action followed.

**III. STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. Id.; Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  Substantial evidence means such evidence as a reasonable person might accept as

1  adequate to support a conclusion.  Richardson, 402 U.S. at 401;

2  Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).  It

3  is more than a scintilla but less than a preponderance.

4  Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec.

5  Admin., 466 F.3d 880, 882 (9th Cir. 2006)).  To determine whether

6  substantial evidence supports a finding, the reviewing court

7  "must review the administrative record as a whole, weighing both

8  the evidence that supports and the evidence that detracts from

9  the Commissioner's conclusion."  Reddick v. Chater, 157 F.3d 715,

10 720 (9th Cir. 1996).  "If the evidence can reasonably support

11 either affirming or reversing," the reviewing court "may not

12 substitute its judgment" for that of the Commissioner.  Id. at

13 720-21.

14 **IV.   THE EVALUATION OF DISABILITY**

15      People are "disabled" for purposes of receiving Social

16 Security benefits if they are unable to engage in any substantial

17 gainful activity owing to a physical or mental impairment that is

18 expected to result in death or which has lasted, or is expected

19 to last, for a continuous period of at least 12 months.  42

20 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257

21 (9th Cir. 1992).

22      A.   The Five-Step Evaluation Process

23      An ALJ follows a five-step sequential evaluation process to

24 assess whether someone is disabled.  20 C.F.R. § 416.920(a)(4);

25 Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as

26 amended Apr. 9, 1996).  In the first step, the Commissioner must

27 determine whether the claimant is currently engaged in

28 substantial gainful activity; if so, the claimant is not disabled

1   and the claim must be denied.  § 416.920(a)(4)(i).  If the

2   claimant is not engaged in substantial gainful activity, the

3   second step requires the Commissioner to determine whether the

4   claimant has a "severe" impairment or combination of impairments

5   significantly limiting his ability to do basic work activities;

6   if not, a finding of not disabled is made and the claim must be

7   denied.  § 416.920(a)(4)(ii).  If the claimant has a "severe"

8   impairment or combination of impairments, the third step requires

9   the Commissioner to determine whether the impairment or

10  combination of impairments meets or equals an impairment in the

11  Listing of Impairments ("Listing") set forth at 20 C.F.R., Part

12  404, Subpart P, Appendix 1; if so, disability is conclusively

13  presumed and benefits are awarded.  § 416.920(a)(4)(iii).

14      If the claimant's impairment or combination of impairments

15  does not meet or equal one in the Listing, the fourth step

16  requires the Commissioner to determine whether the claimant has

17  sufficient residual functional capacity ("RFC")[1] to perform his

18  past work; if so, he is not disabled and the claim must be

19  denied.  § 416.920(a)(4)(iv).  The claimant has the burden of

20  proving he is unable to perform past relevant work.  Drouin, 966

21  F.2d at 1257.  If the claimant meets that burden, a prima facie

22  case of disability is established.  Id.  If that happens or if

23  the claimant has no past relevant work, the Commissioner bears

24  the burden of establishing that the claimant is not disabled

25  because he can perform other substantial gainful work available

26  _____

27      [1]RFC is what a claimant can do despite existing exertional
    and nonexertional limitations.  § 416.945; see Cooper v.
28  Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

1   in the national economy.  § 416.920(a)(4)(v).  That determination

2   comprises the fifth and final step in the sequential analysis.

3   § 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

4          B.   The ALJ's Application of the Five-Step Process

5          At step one, the ALJ found that Plaintiff had not engaged in

6   substantial gainful activity since November 12, 2010, his

7   application date.[2]  (AR 13.)  At step two, he found that

8   Plaintiff had the severe impairments of "affective disorder,

9   obsessive-compulsive disorder, schizophrenia, psychotic disorder,

10  marijuana dependence, rule out dementia, and rule out induced

11  cognitive disorder."  (Id.)

12         At step three, he determined that Plaintiff's impairments

13  did not meet or equal any of the impairments in the Listing.  (AR

14  14-15.)  At step four, the ALJ found that Plaintiff had the RFC

15  to perform

16         a full range of work at all exertional levels but with

17         the following nonexertional limitations: [he] can perform

18         simple  one  to  two  step  instructions;  he  can  have

19         occasional interaction with coworkers and supervisors; he

20         cannot have contact with the general public; and he can

21         be absent from work 5% of the time.

22  (AR 15.)  The ALJ found that Plaintiff could perform his past

23  relevant work as a construction laborer as he actually performed

24  ─────────────────────

25         [2]The ALJ assessed whether Plaintiff had been under a
    disability on or after his application date rather than his
26  alleged onset date (see AR 13, 22), noting that the earliest
    month Plaintiff could receive SSI benefits was the month
27  following the month in which he filed his application (AR 17
    (citing § 416.335)).  Plaintiff has not challenged that portion
28  of the ALJ's decision.

1  it and as generally performed in the regional and national

2  economy.  (AR 21-22.)  He therefore concluded that Plaintiff was

3  not disabled.  (AR 22.)

4  **V.   DISCUSSION**

5       Plaintiff contends that the ALJ erred in discounting the

6  opinions of his treating physician, Dr. Prakashandra C. Patel,

7  and an examining physician, Dr. Romualdo R. Rodriguez.  (J. Stip.

8  at 2-3.)  For the reasons discussed below, reversal is warranted.

9       A.   Relevant Facts[3]

10      On March 4, 2011, Dr. Rodriguez, a "board eligible"

11 psychiatrist, performed a complete psychiatric evaluation of

12 Plaintiff and reviewed at least some of his medical records.  (AR

13 367-73.)  They "included records stating that the claimant is

14 'not coherent and may have bipolar disorder, schizophrenia, or is

15 schizoaffective.'"  (AR 367.)  Dr. Rodriguez noted that Plaintiff

16 had been psychiatrically hospitalized three times since he turned

17 21.  (AR 368.)  He found that Plaintiff reportedly ran errands,

18 went to the store, cooked and made snacks, did household chores,

19 and dressed and bathed himself but that "[r]ecently, someone has

20 to be with him when he is doing these things" and Plaintiff

21 "cannot leave home alone or handle his own cash or pay his own

22 bills."  (AR 369.)  Plaintiff had a history of marijuana and

23 methamphetamine use, but it was "not known if he [was] still

24 actually using drugs."  (Id.)

25      Upon examination, Dr. Rodriguez found that Plaintiff's eye

26

27

28      [3]Because the parties are familiar with the facts, they are
   summarized only to the extent relevant to the disputed issues.

contact and interpersonal contact were poor, he was generally

uncooperative, and he was unable to spontaneously volunteer

information.  (Id.)  Dr. Rodriguez noted that it was "not clear

if [Plaintiff was] under the influence of drugs or alcohol."

(Id.)  Plaintiff's thought processes were disorganized and "not

coherent," and he gave irrelevant answers to questions.  (AR

370.)  He could perform simple math problems and "serial threes

slowly up to 12," though he "talked to himself often," but he

could not spell "world" forward or backward.  (AR 371.)  When

asked the similarities between a table and a chair, Plaintiff

answered, "I don't know."  (Id.)

     Dr. Rodriguez diagnosed "[r]ule out schizophrenia," "[r]ule

out dementia," and "[r]ule out drug induced cognitive disorder."

(Id.)  He observed,

> [Plaintiff's] affect appeared disconnected and [he] just
> smiled during the interview and insisted that everything
> is "okay."  His answers during the mental status exam did
> not have anything to do with the questions and often he
> would just ignore the question and not answer.
>
>     It is hard to tell if the claimant has developed
> schizophrenia  or  dementia  or  that  his  psychiatric
> condition is drug induced.  Psychological testing and a
> tox screen would prove useful to better understand what
> his true condition is.

(AR 372.)

     Dr. Rodriguez opined that Plaintiff was unable to

understand, remember, or carry out even simple one- or two-step

job instructions.  (Id.)  He further found that Plaintiff was

1  "moderately to severely" limited in his ability to (1) relate to

2  and interact with supervisors, coworkers, and the public; (2)

3  maintain concentration, attention, persistence, and pace; (3)

4  adapt to common workplace stresses; (4) maintain regular

5  attendance and consistently perform work activities; and (5)

6  perform work activities without special or additional

7  supervision.  (AR 372-73.)  Dr. Rodriguez believed that Plaintiff

8  was incapable of managing his own funds.  (AR 373.)

9      On September 19, 2011, Dr. Patel completed a two-page check-

10  off form titled "Medical Opinion Re: Ability to Do Work-Related

11  Activities (Mental)."[4]  (AR 424-25.)  Dr. Patel opined that

12  Plaintiff was "[s]eriously limited [in], but not precluded" from,

13  carrying out very short and simple instructions and adhering to

14  basic standards of neatness and cleanliness.[5]  (Id.)  Dr. Patel

15  opined that Plaintiff was "[u]nable to meet competitive

16  standards" in the following areas: understanding and remembering

17  very short and simple instructions, maintaining regular

18  attendance, working with or around others without being

19  distracted, asking simple questions and requesting assistance,

20  getting along with coworkers, dealing with normal work stress,

21  dealing with the stress of semiskilled and skilled work,

22

23

24      [4]Dr. Patel did not list an area of specialization, but
Plaintiff testified that Dr. Patel was his treating psychiatrist.
25  (AR 40-41, 47; see also AR 243.)

26      [5]The form defined "seriously limited, but not precluded" as
"ability to function in this area is seriously limited and less
27  than satisfactory, but not precluded," and stated that "[t]his is
a substantial loss of ability to perform the work-related
28  activity."  (AR 424.)

1  interacting with the public, and maintaining socially appropriate

2  behavior.[6]  (Id.)  Dr. Patel opined that Plaintiff had "[n]o

3  useful ability to function" in the following areas: remembering

4  worklike procedures; maintaining attention for a two-hour

5  segment; sustaining an ordinary routine without special

6  supervision; making simple work-related decisions; completing a

7  normal workday and workweek; performing at a consistent pace;

8  accepting instructions and responding appropriately to criticism

9  from supervisors; responding appropriately to changes in a

10  routine work setting; being aware of normal hazards and taking

11  appropriate precautions; understanding, remembering, and carrying

12  out detailed instructions; setting realistic goals and making

13  plans independently of others; traveling in an unfamiliar place;

14  and using public transportation.[7]  (Id.)

15       In the section of the form for explaining his findings, Dr.

16  Patel wrote that Plaintiff "cannot comprehend" and "suffers from

17  schizophrenia, the type which affects his cognition/memory and

18  ability to function socially."  (AR 425.)  Dr. Patel wrote that

19  Plaintiff is at times "mute" and "at times able to respond by

20  only one or two words."  (Id.)  Dr. Patel opined that Plaintiff

21  "cannot retain any type of instructions given to him" and would

22  be "unable to work in any working condition."  (Id.)

23

24       [6]The form defined "unable to meet competitive standards" as
    "your patient cannot satisfactorily perform this activity
25  independently, appropriately, effectively on a sustained basis in
    a regular work setting."  (AR 424.)
26

27       [7]The form defined "no useful ability to function" as "an
    extreme limitation," meaning that "your patient cannot perform
28  this activity in a regular work setting."  (AR 424.)

1        The ALJ gave "some weight" to examining physician

2   Rodriguez's opinion, noting that his "assessment regarding a

3   moderate impairment in the ability to relate [to] and interact

4   with supervisors, coworkers, and the public" was consistent with

5   his objective findings.  (AR 20.)  The ALJ stated that he was not

6   giving "full weight" to Dr. Rodriguez's opinion because "his

7   assessment that [Plaintiff] could not understand, remember, and

8   carry out simple one or two [step] job instructions" was

9   inconsistent with Plaintiff's aunt's statements in a function

10  report that he could make a sandwich, use the microwave, and cook

11  eggs, which "show [Plaintiff's] ability to follow simple

12  instructions."  (Id.; see also AR 190.)

13       The ALJ gave "some weight" to Dr. Patel's opinion, finding

14  that the record did indeed show that Plaintiff's schizophrenia

15  precluded him from interacting appropriately with the general

16  public.  (AR 21.)  The ALJ found, however, that it was "unclear"

17  whether Dr. Patel had a "long treating relationship" with

18  Plaintiff that would have "enabled Dr. Patel to provide a

19  longitudinal picture of [Plaintiff's] medical condition."  (Id.)

20  The ALJ stated that "[d]ue to the lack of such information, [he]

21  does not give full weight to Dr. Patel's opinion."  (Id.)

22       B.   Applicable Law

23       Three types of physicians may offer opinions in Social

24  Security cases: (1) those who directly treated the plaintiff, (2)

25  those who examined but did not treat the plaintiff, and (3) those

26  who did not treat or examine the plaintiff.  Lester, 81 F.3d at

27  830.  A treating physician's opinion is generally entitled to

28  more weight than that of an examining physician, and an examining

10

1  physician's opinion is generally entitled to more weight than

2  that of a nonexamining physician.  Id.

3      This is true because treating physicians are employed to

4  cure and have a greater opportunity to know and observe the

5  claimant.  Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

6  If a treating physician's opinion is well supported by medically

7  acceptable clinical and laboratory diagnostic techniques and is

8  not inconsistent with the other substantial evidence in the

9  record, it should be given controlling weight.  § 416.927(c)(2).

10 If a treating physician's opinion is not given controlling

11 weight, its weight is determined by length of the treatment

12 relationship, frequency of examination, nature and extent of the

13 treatment relationship, amount of evidence supporting the

14 opinion, consistency with the record as a whole, the doctor's

15 area of specialization, and other factors.  § 416.927(c)(2)-(6).

16      When a treating or examining physician's opinion is not

17 contradicted by other evidence in the record, it may be rejected

18 only for "clear and convincing" reasons.  See Carmickle v.

19 Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008)

20 (quoting Lester, 81 F.3d at 830-31).  When a treating or

21 examining physician's opinion is contradicted, the ALJ must

22 provide only "specific and legitimate reasons" for discounting

23 it.  Id.  The weight given an examining physician's opinion,

24 moreover, depends on whether it is consistent with the record and

25 accompanied by adequate explanation, among other things.

26 § 416.927(c)(3)-(6).  Furthermore, "[t]he ALJ need not accept the

27 opinion of any physician, including a treating physician, if that

28 opinion is brief, conclusory, and inadequately supported by

1   clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th

2   Cir. 2002); accord Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d

3   1190, 1195 (9th Cir. 2004).

4          C.    The ALJ Erred In Assessing Dr. Patel's Opinion

5          As discussed, the ALJ found that it was "unclear" whether

6   Plaintiff had a "long treatment relationship" with Dr. Patel,

7   which would have "enabled Dr. Patel to provide a longitudinal

8   picture of [Plaintiff's] medical condition." (AR 21.)  The ALJ

9   concluded that Dr. Patel's opinion was not entitled to full

10  weight "[d]ue to the lack of such information." (Id.)  The ALJ

11  gave no other reason for discounting Dr. Patel's opinion.

12  Plaintiff contends that reversal is appropriate because the ALJ

13  failed to support his "conclusory reasons" for rejecting Dr.

14  Patel's findings and because the ALJ should have further

15  developed the record by "contacting Dr. Patel regarding his

16  treating relationship with [P]laintiff." (J. Stip. at 7.)

17  Reversal is warranted because the ALJ failed to fulfill his duty

18  to develop the record and failed to provide a sufficient reason

19  for discounting Dr. Patel's opinion.

20         In determining disability, the ALJ has a "duty to fully and

21  fairly develop the record and to assure that the claimant's

22  interests are considered." Garcia v. Comm'r of Soc. Sec., 768

23  F.3d 925, 930 (9th Cir. 2014); see also Howard ex rel. Wolff v.

24  Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) ("In making a

25  determination of disability, the ALJ must develop the record and

26  interpret the medical evidence.").  Nonetheless, it remains the

27  plaintiff's burden to produce evidence in support of his

28  disability claims.  See Mayes v. Massanari, 276 F.3d 453, 459

12

1    (9th Cir. 2001).  "[A]mbiguous evidence, or the ALJ's own finding

2    that the record is inadequate to allow for proper evaluation of

3    the evidence, triggers the ALJ's duty to conduct an appropriate

4    inquiry."  McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir. 2011)

5    (internal quotation marks omitted); accord Tonapetyan v. Halter,

6    242 F.3d 1144, 1150 (9th Cir. 2001).  "The ALJ may discharge this

7    duty in several ways, including: subpoenaing the claimant's

8    physicians, submitting questions to the claimant's physicians,

9    continuing the hearing, or keeping the record open after the

10   hearing to allow supplementation of the record."  Tonapetyan, 242

11   F.3d at 1150.  The ALJ's duty to develop the record is

12   heightened, moreover, when the claimant may be mentally ill and

13   thus unable to protect his own interests.  Id.; see also Dervin

14   v. Astrue, 407 F. App'x 154, 156 (9th Cir. 2010).

15        Here, the ALJ specifically found that the record was

16   "unclear" and "lack[ed]" information regarding Dr. Patel's

17   treatment relationship with Plaintiff, and that the doctor's

18   opinion therefore could not be fully credited.  The ALJ's

19   explicit finding that the record was inadequate triggered his

20   duty to develop it.  See McLeod, 640 F.3d at 885.  The ALJ failed

21   to discharge that duty by gathering more evidence or leaving the

22   record open, and instead he simply rejected most of Dr. Patel's

23   opinion.  In doing so, the ALJ erred.  See Smolen, 80 F.3d at

24   1288 (finding that "[i]f the ALJ thought he needed to know the

25   basis of [a physician's] opinions in order to evaluate them, he

26   had a duty to conduct an appropriate inquiry, for example, by

27   subpoenaing the physicians or submitting further questions to

28   them" or by "continu[ing] the hearing to augment the record");

Dervin, 407 F. App'x at 156 (noting that "[i]n cases of chronic mental impairment . . . the ALJ is required to gather all records of past treatment"); § 416.912(d) ("Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application . . . .").

The ALJ's failure to further develop the record, moreover, does not appear to have been harmless. See Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) (error harmless when "inconsequential to the ultimate disability determination"). Plaintiff reported in a "Disability Report – Appeal" that he first saw Dr. Patel on June 13, 2011, and that his next appointment was scheduled for July 12. (AR 243.) At the June 11, 2012 hearing, moreover, Plaintiff and his mother both testified that Plaintiff saw Dr. Patel every month. (See AR 41, 46-47, 51.) Thus, it appears that Dr. Patel likely saw Plaintiff at least a few times before rendering his September 19, 2011 opinion. Moreover, the other record evidence is not inconsistent with Dr. Patel's opinion, as it shows that Plaintiff was involuntarily hospitalized and treated for his psychiatric conditions three times: August 11 to 13, 2009 (see AR 296-346),[8] November 11 to 12, 2010 (see AR 265-73), and July 25 to August 5, 2011 (see AR 392-98, 400-22). Plaintiff's diagnoses included

---

[8]Following this hospitalization, Plaintiff was discharged to Cedar House, apparently a rehabilitation facility. (See AR 296-97; see also 283-84 (Aug. 27, 2009 note stating that Plaintiff needed refill of medication and was living at "Cedar House rehab").) The record does not contain any records from Cedar House.

14

1   psychotic disorder (AR 296, 303, 395), rule out schizoaffective

2   disorder (AR 267), cannabis abuse (id.; see also AR 303, 401),

3   bipolar I disorder (AR 267), schizophrenia "paranoid type" (AR

4   401), and rule out "[o]ther substance induced Psychotic disorder"

5   (AR 303).  Dr. Rodriguez, moreover, examined Plaintiff and found

6   limitations similar to those found by Dr. Patel, such as an

7   inability to understand, remember, or carry out simple one- or

8   two-step job instructions and moderate to severe limitations on

9   his ability to maintain concentration, attention, persistence,

10  and pace; adapt to common workplace stresses; maintain regular

11  attendance; and perform work activities without special or

12  additional supervision.  (AR 372-73; compare AR 424-25 (Dr.

13  Patel's finding that Plaintiff had "[n]o useful ability to

14  function" in areas including maintaining attention for two hours,

15  sustaining ordinary routine without special supervision,

16  completing normal workweek without interruption, performing at

17  consistent pace, and responding to changes in routine work

18  setting and that he was "[u]nable to meet competitive standards"

19  in areas including understanding and remembering very short and

20  simple instructions, maintaining regular attendance, and dealing

21  with normal work stress).

22      Moreover, other than the lack of evidence regarding Dr.

23  Patel's treatment relationship with Plaintiff, the ALJ provided

24  no reason for discounting his opinion.  Indeed, even if Dr. Patel

25  were an examining physician who had no treatment relationship at

26  all with Plaintiff, the ALJ still would have been obligated to

27  provide at least specific and legitimate reasons for discounting

28  his opinion, and more likely clear and convincing reasons given

1  that little in the record contradicted it.  Thus, this case must

2  be remanded so that the ALJ can further develop the record and

3  reassess the opinion of treating physician Dr. Patel.

4       D.   Dr. Rodriguez's Opinion

5       Plaintiff contends that the ALJ "failed to provide specific

6  and legitimate reasons, supported by substantial evidence, for

7  implicitly rejecting [Dr. Rodriguez's] opinions that [P]laintiff

8  is moderately to severely limited in his ability to maintain

9  regular attendance in the work place and perform work activities

10 on a consistent basis as well as to perform work activities

11 without special or additional supervision."  (J. Stip. at 15.)

12 Indeed, it appears that the ALJ may have erred in assessing Dr.

13 Rodriguez's decision.  The ALJ rejected Dr. Rodriguez's opinion

14 that Plaintiff could not understand, remember, or carry out

15 simple one- or two-step job instructions based solely on

16 Plaintiff's aunt's statements that he could make a sandwich, use

17 a microwave, and cook eggs.  (AR 20; see also AR 190.)  Even

18 assuming that is a legally sufficient reason, the ALJ failed to

19 give any reasons for rejecting Dr. Rodriguez's other findings,

20 such as his conclusion that Plaintiff was "moderately to

21 severely" limited in his ability to adapt to common workplace

22 stresses and perform work activities without special or

23 additional supervision.  (See AR 372-73.)  Because the Court

24 remands this case for further development of the record, however,

25 it need not resolve this issue.  On remand, the ALJ will

26 necessarily reassess Dr. Rodriguez's opinion in light of the

27 additional evidence, which will presumably include Dr. Patel's

28 treatment notes.

1      E.   Remount for Further Proceedings Is Appropriate

2          When, as here, an ALJ errs in denying benefits, the Court

3   generally has discretion to remand for further proceedings.  See

4   Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000).  When no

5   useful purpose would be served by further administrative

6   proceedings, however, or when the record has been fully

7   developed, it is appropriate under the "credit-as-true" rule to

8   direct an immediate award of benefits.  Id. at 1179 (noting that

9   "the decision of whether to remand for further proceedings turns

10  upon the likely utility of such proceedings"); see also Garrison

11  v. Colvin, 759 F.3d 995, 1019-20 (9th Cir. 2014).

12         Under the credit-as-true framework, three circumstances must

13  be present before the Court may remand to the ALJ with

14  instructions to award benefits: "(1) the record has been fully

15  developed and further administrative proceedings would serve no

16  useful purpose; (2) the ALJ has failed to provide legally

17  sufficient reasons for rejecting evidence, whether claimant

18  testimony or medical opinion; and (3) if the improperly

19  discredited evidence were credited as true, the ALJ would be

20  required to find the claimant disabled on remand."  Garrison, 759

21  F.3d at 1020.  When, however, the ALJ's findings are so

22  "insufficient" that the Court cannot determine whether the

23  rejected testimony should be credited as true, the Court has

24  "some flexibility" in applying the credit-as-true rule.  Connett

25  v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003); see also

26  Garrison, 759 F.3d at 1020 (noting that Connett established that

27  credit-as-true rule may not be dispositive in all cases).  This

28  flexibility should be exercised "when the record as a whole

1  creates serious doubt as to whether the claimant is, in fact,

2  disabled within the meaning of the Social Security Act."

3  Garrison, 759 F.3d at 1021.

4       Here, under Connett, remand for further proceedings is

5  appropriate.  As discussed, the ALJ failed to fully develop the

6  record, and further administrative proceedings are required to

7  allow him to do so.  After obtaining additional evidence, which

8  presumably will include Dr. Patel's treatment notes, the ALJ must

9  reassess the medical-opinion evidence.  Based on the current

10 record, the Court cannot determine whether either medical opinion

11 should be credited as true or whether Plaintiff is in fact

12 disabled.  Moreover, the medical evidence indicates that

13 Plaintiff's conditions may stem from substance abuse, in which

14 case he would not be entitled to benefits.  (See, e.g., AR 372

15 (Dr. Rodriguez finding unclear whether "psychiatric condition is

16 drug induced"); AR 303 (diagnosing possible "[o]ther substance

17 induced Psychotic disorder")); see also 42 U.S.C. § 423(d)(2)(C)

18 (claimant not disabled "if alcoholism or drug addiction would

19 . . . be a contributing factor material to the Commissioner's

20 determination that the individual is disabled").  If on remand

21 the ALJ determines that Plaintiff is disabled, he must then

22 assess whether Plaintiff would still be found disabled if he

23 stopped abusing substances.  See Bustamante v. Massanari, 262

24 F.3d 949, 955 (9th Cir. 2001) ("If the ALJ finds that the

25 claimant is disabled and there is 'medical evidence of [his or

26 her] drug addiction or alcoholism,' then the ALJ should proceed

27 under §§ 404.1535 or 416.935 to determine if the claimant 'would

28 still [be found] disabled if [he or she] stopped using alcohol or

18

1    drugs.'" (alterations in original)); § 416.935 ("If we find that

2    you are disabled and have medical evidence of your drug addiction

3    or alcoholism, we must determine whether your drug addiction or

4    alcoholism is a contributing factor material to the determination

5    of disability . . . .").

6    **VI.    CONCLUSION**

7        Consistent with the foregoing, and pursuant to sentence four

8    of 42 U.S.C. § 405(g),[9] IT IS ORDERED that judgment be entered

9    REVERSING the decision of the Commissioner, GRANTING Plaintiff's

10   request for remand, and REMANDING this action for further

11   proceedings consistent with this Memorandum Opinion.  IT IS

12   FURTHER ORDERED that the Clerk serve copies of this Order and the

13   Judgment on counsel for both parties.

14

15

16

17   DATED: December 22, 2014        JEAN ROSENBLUTH
                                      ────────────────────────
18                                    JEAN ROSENBLUTH
                                      U.S. Magistrate Judge

19

20

21

22

23

24

25

----

26       [9]This sentence provides: "The [district] court shall have
     power to enter, upon the pleadings and transcript of the record,
27   a judgment affirming, modifying, or reversing the decision of the
     Commissioner of Social Security, with or without remanding the
28   cause for a rehearing."